**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORP,   Civil Action No.: 1:17-CV-00066

    Plaintiffs,   HON. PAUL L. MALONEY

vs.

XL INSURANCE AM., INC v. fna WINTERTHUR
INTERNATIONAL AM. INSURANCE CO.,

    Defendant.

---

## BRIEF IN SUPPORT OF NON-PARTY, TIG's MOTION FOR PROTECTIVE ORDER

### I. INTRODUCTION

TIG Specialty Insurance Company ("TIG") (now known as Ironshore Specialty Insurance Company) seeks an order precluding the depositions of six of its former and present attorneys by Defendant XL Insurance America, Inc. ("XL"). Such depositions, whether intentionally or not, would put at great risk TIG's attorney-client and work product privileges and impose undue costs and burdens on TIG despite these depositions having little, if any, relevance to any disputed material fact between Stryker Corporation and Howmedica Osteonics Corp. ("Stryker") and XL in this case.

TIG is not and was never a party to the instant action. However, TIG was a party to an action filed by Stryker in 2005 (Stryker II), in which Stryker sought from TIG recovery with respect to certain underlying Duracon Unicompartmental Knee ("DUK") implant claims that are the subject of the instant action. After extended proceedings before this court and two appeals, Stryker II was resolved in late-2016 in favor of TIG, with the Sixth Circuit Court of

1

Appeals finding that TIG has no obligation with respect to such claims. *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 842 F.3d 422, 424 (6th Cir. 2016).

On the heels of the conclusion of Stryker II, Stryker initiated the instant action against XL, evidently arguing that XL breached duties to Stryker when XL resolved and paid claims by Pfizer Corporation arising from DUK implants. Neither Stryker nor XL has at any time contended that TIG is responsible for any portion of the amounts Defendant paid Pfizer in connection with these claims (though there is a long history of attempts by both Stryker and XL to pull TIG into litigation between them notwithstanding the fact that TIG is not a party to such litigation).

In 2018, Stryker had a document subpoena issue to TIG. TIG responded by producing certain documents and providing declarations from three of its attorneys - Carole Bos, George Manos and Rickey Glover - addressing various aspects of that subpoena while preserving TIG's privileges.

Though the reasons for it are by no means clear to TIG, it appears Stryker has included in its trial witness list Ms. Bos and Messrs. Manos and Glover. Plaintiff did so without consulting TIG.  Again, it is not clear why any of these TIG attorneys would have any evidence relevant to any fact in dispute between Stryker and XL, let alone evidence that is not protected from discovery.  In reaction to this trial witness list, XL advised that it will be issuing <u>subpoenas for deposition to six former and present TIG attorneys</u> (three more than apparently included on Stryker's witness list):

- George Manos: TIG's outside attorney between 2005 and 2009
- Amy Miner: TIG's outside attorney during the period between 2005 and 2009
- Diane Ehrhart: TIG's outside attorney during the period between 2005 and 2009

2

- Carlos del Carpio: TIG's outside attorney between 2009 and 2016 and presently an in-house attorney for TIG
- Rickey Glover: In-house attorney for TIG
- Carole Bos: TIG's outside attorney from 2009 to present

The sheer number of current and former TIG attorneys whom XL seeks to depose necessarily puts at risk TIG's privileges. This risk is compounded by the fact that it is difficult to conceive a series of questions beyond the narrow statements in the declarations submitted by Ms. Bos and Messrs. Manos and Glover that would not almost inherently seek information subject to attorney-client or work product protections. Not only is the risk to TIG's protections untenable, but the burden and expense necessary to preserve TIG's privileges (including the presence of a TIG attorney at each deposition to preserve TIG's privileges) are beyond what can be reasonably imposed on a nonparty.

The situation is compounded by the fact that it is not at all clear (to either of the litigating parties, let alone to TIG) that any of TIG's current or former attorneys will be called to testify at trial. Indeed, despite the late stage of discovery in which the parties find themselves, TIG is advised that whether its attorneys stay on Stryker's' trial witness list may turn on XL's responses to certain outstanding discovery. Concomitantly, TIG is advised that XL does not intend to depose any of TIG's attorneys if Stryker drops them from its trial witness list. While TIG has proposed that questions surrounding proposed depositions of its attorneys not be joined until the relevant outstanding discovery responses are provided by XL and reviewed by Stryker, that proposal has been rejected, resulting in XL's indication that it will immediately issue deposition subpoenas to the six above-listed TIG attorneys (and, therefore, in the need to present this motion).

3

For these reasons, TIG requests a protective order prohibiting the deposition of any present or former TIG attorney or, in the alternative, a protective order strictly limiting any such deposition to the scope of the declarations submitted by Ms. Bos and Messrs. Manos and Glover and directing XL and/or Stryker to reimburse TIG for reasonable expenses (including attorney's fees) which it incurs in connection with any such deposition.

## II. FACTS

TIG has no interest or involvement in the instant litigation between Stryker and XL. This litigation, as TIG understands it, revolves around whether XL misled Stryker into believing that no harm would come to Stryker as a result of a settlement XL concluded with Pfizer (from which Stryker had purchased the DUK implants that resulted in underlying claims against both Pfizer and Stryker) in 2009. The XL-Pfizer settlement extinguished Stryker's liability to Pfizer arising from DUK implants. TIG was not aware of that settlement until after it was entered into by XL.

In the fall of 2018, Stryker served TIG with a subpoena for documents regarding TIG's knowledge of XL's settlement with Pfizer. TIG raised concerns about the scope of that subpoena, particularly in light of applicable privileges. TIG and Stryker reached a compromise with respect to that subpoena pursuant to which TIG produced responsive non-privileged documents and submitted supporting declarations from three of its attorneys: Carole Bos, George Manos, and Rickey Glover. The produced documents and declarations confirmed that TIG had no prior knowledge of XL's settlement with Pfizer. It is by no means apparent why this fact is relevant to the dispute between Stryker and XL, and **there is no indication that either Stryker or XL disputes this fact**.

Without TIG's knowledge, Stryker apparently listed three of TIG's attorneys (Ms. Bos and Messrs. Manos and Glover) as potential trial witnesses in this action. XL, in turn, has advised that it intends to issue deposition subpoenas[1] for not only the three TIG attorney declarants, but also for three additional TIG attorneys: Carlos del Carpio, Amy Miner and Diane Ehrhart.

In light of the inherent and obvious risks to TIG's privileges, TIG objects to XL's attempt to depose its counsel.

### III. ARGUMENT

#### A. Good Cause for a Protective Order Prohibiting the Depositions of TIG's Attorneys

FRCP 26(b)(1) states that "Parties may obtain discovery regarding any **nonprivileged** matter that is relevant to any party's claim or defense and **proportional to the needs of the case**." *Id*. (emphasis added) The rule also states that "If the court orders discovery of [documents and tangible things prepared in anticipation of litigation], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FRCP 26(b)(3)(B).

Federal Rule of Civil Procedure 26(c)(1) also provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending..." and that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense..." The court may enter an order "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A) and (D).

---

[1] TIG has received one such subpoena at present without seeking documents. It is unclear whether additional subpoenas will also seek documents.

XL has advised that it intends to issue subpoenas to six of TIG's attorneys - Carole Bos, Rickey Glover, Carlos del Carpio, George Manos, Amy Miner and Diane Ehrhart - for deposition. Except Mr. Glover, each of these individuals was retained at various times by TIG in connection with prior litigation involving TIG, Stryker and XL. (Mr. Glover was at all relevant times an in-house attorney for TIG.)  The knowledge of these TIG lawyers is, with very narrow exceptions, limited to privileged material and information. Virtually any question that may be presented to any of these attorneys beyond the scope of the 2018 declarations would invade TIG's privileges (privileges which TIG intends to assert and preserve). Given such inherent and obvious risk to TIG's undisputed privileges, the court should prohibit the depositions of TIG's attorneys in this matter.

### B.    This Case Does Not Meet the Standard for Deposing an Attorney.

Deposing an attorney is an extraordinary step. In *Hickman v. Taylor,* 329 U.S. 495, 67 S. Ct. 385 (1947), the court stated that if the court required discovery from attorneys involved in the proceedings "the interests of the clients and the cause of justice would be poorly served." *Id*. at 511. The Court explained:

> Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.

Id., at 510.

Here, as in *Hickman v. Taylor*, any information TIG's attorneys may have today is information obtained in the course of that attorney's representation of and consultation with TIG.

In *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621 (6th Cir. 2002), the court set forth the standard for compelling discovery from opposing counsel.

> Discovery from an opposing counsel is "limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986)

*Id*. 628.

XL cannot meet the standard for deposing any of TIG's attorneys. Not only is it far from clear that the facts as to which XL is looking to depose TIG's attorneys are disputed facts, but also it is apparent that information regarding such facts can be obtained by other means. Further, and central to this motion, any information sought from TIG's counsel beyond the scope of the 2018 declarations is almost certain to be privileged.

**1. Other Means Exist to Obtain the Information.**

In October 2018, Stryker issued a subpoena to TIG requesting "Insurance Records - Pertaining to produce (sic) all documents related to the state of mind of Defendant XL Insurance America, Inc. and its agents related to the conduct that forms the basis of Stryker's bad-faith claim against Defendant." (Exhibit 1). TIG responded to the subpoena by producing responsive documents as well as declarations from attorneys Carole Bos, George Manos and Rickey Glover. (Declarations attached as Exhibit 2). The declarations of Ms. Bos and Messrs. Manos and Glover convey all of their nonprivileged knowledge in this matter. The nonprivileged information that XL seeks can be derived from these documents and declarations already produced. XL's attempts to take the depositions of these lawyers would be pointless because any relevant nonprivileged information they

have access to has already been disclosed. (The other TIG attorneys XL seeks to depose are neither declarants nor on Stryker's witness list.)

### 2. The Information is Privileged.

In *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, (8th Cir. 1986), the court held that "requiring [an attorney] to testify that she is aware that documents exist concerning a certain issue is tantamount to requiring her to reveal her legal theories and opinions concerning that issue." *Id*. at 1328. The *Shelton* court also stated "The work-product doctrine not only protects from discovery materials obtained or prepared in anticipation of litigation, but also the attorney's mental impressions, including thought processes, opinions, conclusions, and legal theories." *Id.* Here, XL has not fully discussed the topics it plans to cover with the TIG's attorneys who are to be subpoenaed. Any non-privileged information they may have has already substantially been provided through the 2018 declarations. Communications among TIG counsel and with TIG and related mental impressions are all privileged.

### C. XL's Request for Depositions of TIG Attorneys is Premature.

Counsel for Stryker has stated that it may remove all TIG attorneys from its witness list after receipt and review of discovery that is outstanding from XL. (Exhibit 3). XL is pursuing these depositions despite not having provided Stryker discovery responses on which the purported need to depose any TIG attorney apparently turns. It is clear that this situation is the result of the juxtaposition of incomplete core discovery between Stryker and XL against certain court deadlines (in particular a September 19 discovery cut off). It is evident that a slight modification to these deadlines, even if only as respects potential depositions of TIG attorneys, would assist the parties in concluding whether any TIG witness should be deposed and, if so, which ones. Such a modification would allow the

parties (especially XL) time to determine whether it believes it will actually need to depose any TIG attorney and, if so, at least to narrow the number of such depositions it seeks.

This Court stated in *Kellogg Co. v. FPC Flexible Packaging Corp.*, 1:11-CV-272, 2012 WL 769476 (W.D. Mich. Mar. 7, 2012), that, "the party seeking relief from a case management order must make a showing of good cause." *Id.* There is good cause to alter the case management order in this circumstance. The central question among the good-cause factors is usually whether a party acted diligently.[2] But a slight modification to the case management order in this case may allow Stryker adequate time to review the discovery responses and determine whether it intends to leave any TIG attorney on its witness list. XL has already asserted that it will not seek the deposition of any TIG attorney Stryker drops from its witness list. (Oddly, despite this expressed position, XL currently intends to subpoena for deposition more TIG attorneys than Stryker has included in its witness list.)

### D. TIG Has Attempted to Resolve this Issue in Good Faith.

FRCP 26(c) requires that before a motion for protective order is filed, a nonparty (like a party) must have in good faith attempted "to resolve the dispute without court action." FRCP 26(c)(1). In this instance, TIG sought to reach such a resolution in good faith through conference calls with both counsel for Stryker and XL and emails. (The parties' email communications are contained in the email string attached as Exhibit 4.) As reflected in Exhibit 4, TIG proposed that "the issue of trial testimony and/or depositions of TIG's counsel be put off until after XL's responses to discovery (I don't recall whether this

---

[2] *Gatza v. DCC Litig. Facility, Inc.*, 717 F. App'x 519, 521 (6th Cir. 2017), cert. denied, 138 S. Ct. 1177, 200 L. Ed. 2d 316 (2018)

relates to a disclosure or to requests for admission but that does not really matter) and [Stryker] have the opportunity to determine whether there is still some reason to consider trial testimony from TIG's counsel. The problem they highlighted relates to a September 19 deadline. I suggested an agreement among whomever needs to agree to work around the September 19 date." That proposal has been rejected, largely by citing court deadlines (essentially putting TIG in a position of having to seek this court's intervention before it is clear whether XL will conclude that it will actually seek to proceed with the deposition of any TIG attorney).

### IV. CONCLUSION

TIG respectfully submits that the depositions of any of its attorneys (let alone six of its attorneys) should not be permitted under present circumstances. TIG requests a protective order prohibiting the deposition of any present or former TIG attorney. In the alternative, TIG requests a protective order strictly limiting any such deposition to the scope of the declarations submitted by Ms. Bos and Messrs. Manos and Glover and directing Stryker and/or XL to reimburse TIG for reasonable expenses (including attorney's fees) which it incurs in connection with any such deposition.

Respectfully submitted,

Dated: August 9, 2019   By:   /s/ *Carole D. Bos*
Carole D. Bos (P33638)

BOS & GLAZIER, P.LC.
Attorneys for Nonparty – TIG Insurance Company
990 Monroe Avenue N.W.
Grand Rapids, MI 49503
(616) 458-6814